```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

           v.                          17 CR 398 (ER)

GAETANO VALASTRO,

                Defendant.             Sentence

------------------------------x
                                       New York, N.Y.
                                       January 23, 2020
                                       11:00 a.m.
Before:

                    HON. EDGARDO RAMOS,

                                       District Judge

                         APPEARANCES

GEOFFREY S. BERMAN
     United States Attorney for the
     Southern District of New York
BY:  KIMBERLY RAVENER
     Assistant United States Attorney

ALBERT TALERO
     Attorney for Defendant
```

1          (Case called)

2          MS. RAVENER:  Good morning, your Honor, Kimberly
3  Ravener for the government.

4          MR. TALERO:  Good morning, your Honor, Albert Talero
5  for defendant Gaetano.  I would also like to express to the
6  Court that my client is present and that his family is here to
7  support him.  Thank you.

8          THE COURT:  Thank you.  Good morning to you all.

9          This matter is on for sentencing and in preparation
10 for today's proceeding I have reviewed the presentence report
11 last revised on September 10, 2019, prepared by U.S. Probation
12 officer Ross Kapitansky, which includes a recommendation.  I
13 have also reviewed the letter submitted by Mr. Talero, dated
14 January 22, 2020, as revised, I believe, later that day, which
15 I have received and reviewed, and the government's letter,
16 dated January 9, 2020, in which it indicates its intention to
17 move pursuant to United States Sentencing Guidelines 5K1.1 as a
18 result of Mr. Valastro's cooperation.

19         Is there anything else that I should have received,
20 Ms. Ravener?

21         MS. RAVENER:  No, your Honor.

22         THE COURT:  Mr. Talero.

23         MR. TALERO:  No, your Honor.  However, I would like to
24 make a formal application that the sentencing memorandum be
25 filed under seal.

1     THE COURT:  Any objection, Ms. Ravener?

2     MS. RAVENER:  No objection with respect to
3  Mr. Valastro's submission on the grounds that it contains
4  personal information.  The government expects to file publicly
5  its submission and still would seek permission to do so.

6     THE COURT:  Very well.

7     Is any of Mr. Valastro's file public at this point?  I
8  believe that it is.

9     MS. RAVENER:  I believe that it is.  To the extent,
10 for example, his arrest is public and a number of other things.
11 I think the details of his cooperation are not yet public, your
12 Honor, including his guilty plea.

13    THE COURT:  Mr. Talero, have you received the
14 presentence report and discussed it with Mr. Valastro?

15    MR. TALERO:  Yes, your Honor.

16    THE COURT:  Mr. Valastro, have you read the
17 presentence report and discussed it with your attorney?

18    THE DEFENDANT:  Yes, your Honor.

19    THE COURT:  Are there any objections to the report
20 concerning its factual accuracy?

21    THE DEFENDANT:  Yes, your Honor.

22    MR. TALERO:  No, your Honor.

23    THE COURT:  So there is no objection to the report
24 concerning its factual accuracy?

25    MR. TALERO:  No.

1        THE COURT:  Although I am not required to impose a
2   sentence within a sentencing range calculated under the
3   guidelines, I am required to consider the guidelines in
4   imposing the sentence.  And in order to do so I have to make
5   the calculation concerning the applicable guidelines range.
6        Does either side object to the calculations set forth
7   in the PSR, the presentence report, at paragraphs 50 to 62 in
8   which Mr. Kapitansky calculates the guidelines range?
9        Ms. Ravener.
10       MS. RAVENER:  No objection, your Honor.
11       THE COURT:  Mr. Talero.
12       MR. TALERO:  No objection, your Honor.
13       THE COURT:  In that event I have also independently
14  reviewed the calculation and I agree with it.  I will therefore
15  adopt the calculation in the presentence report.
16       I know Mr. Valastro pleaded guilty to three counts.
17  Those counts are grouped for purposes of the guideline
18  calculation, and I find that the total offense level for the
19  three counts of conviction is 17 and that Mr. Valastro is in
20  criminal history category I because he has no prior
21  convictions.  That yields an applicable guidelines range of 24
22  to 30 months.
23       Ms. Ravener, at this point does the government intend
24  to move pursuant to 5K1.1?
25       MS. RAVENER:  We do, your Honor.

1      THE COURT:  And do you wish to be heard as to the
2 sentence to be imposed?
3      MS. RAVENER:  Briefly, your Honor, yes.
4      As set forth in our letter to the Court regarding
5 Mr. Valastro's crimes and his cooperation, there is no question
6 that this is an incredibly serious offense.  Mr. Valastro's
7 history, having served himself as a police officer for many
8 years, should have taught him to know better.
9      That said, we are making our motion pursuant to
10 Section 5K1.1 of the guidelines today because Mr. Valastro's
11 cooperation was invaluable to this case and the successful
12 prosecution of this case, including his codefendants, who were
13 at the time still officers in the New York City Police
14 Department and, in particular, Paul Dean was serving as the
15 second highest ranking member of the licensed division during a
16 portion of this offense and his subsequent retirement where he
17 continued his criminal activities.
18      For that reason, your Honor, we believe that it's
19 appropriate that Mr. Valastro's cooperation be considered
20 substantially in connection with his sentencing pursuant to the
21 factors set forth in the guidelines.
22      Most importantly, your Honor, Mr. Valastro's
23 cooperation lent an ordinary component to this case by
24 providing an inside view of the conspiracy that really only the
25 coconspirators were in a position to provide.

This was a witness-driven case.  There was at least one very critical recording.  There were other corroborating pieces of evidence, license division records, phone records, etc.  But truly this was from the beginning a witness-driven case driven in part by the cooperation of former police officers, David Villanueva and Richard Ochetal.

And in that kind of a case Mr. Valastro's testimony at trial would have proven critical to pursuing the case.  We credit his cooperation with assisting the government to secure guilty pleas, prompt guilty pleas for both Paul Dean and Robert Espinel, his coconspirators here.

And for those reasons, your Honor, we believe that Mr. Valastro's cooperation should be taken into significant account by this Court today at sentencing.

We are happy to address any further questions that the Court may have.

THE COURT:  Could I ask you, has Mr. Ochetal been sentenced as yet?  It indicates in the presentence that he has not yet been sentenced.

MS. RAVENER:  He has since the time of that report, I believe, your Honor, and Mr. Ochetal was sentenced by Judge Stein to time served, significantly due to his cooperation as well.

Another comparison point for the Court to consider is that Frank Soohoo, a similarly situated bribe payor, caught up

in his own corruption scheme with the license division officers, was sentenced as well following his own cooperation in the broader investigation, and he also was sentenced to time served by Judge Stein.

        THE COURT: Thank you.

        MS. RAVENER: David Villanueva, however, was sentenced to, I believe, four months in prison.

        THE COURT: That I have.

        Thank you.

        Mr. Talero, did you wish to be heard prior to the imposition of sentence?

        MR. TALERO: Yes, your Honor. Thank you.

        I second what the government has presented. The information provided by my client and his willingness to cooperate as thoroughly as he did I think did benefit the government considerably.

        But, beyond that, his life since his arrest has undergone a tremendous -- not transformation, because he was already operating under the influence of his wife, who is very religious, but he has explored his religious beliefs and he is now an ordained minister who has gone back to be a pastor for a radio community, and the two of them have gone forth and raised funds and assisted in operating a church in Ecuador which they are very actively involved in, and at sometime in the future my client would like to go down there and actually be able to

1  preach there.

2  Moreover, he has a solid family.  You see his family
3  is here to support him.  He is every day operating under all
4  the conditions that have been imposed on him by probation and
5  the dictates of this Court, and he is improving his life on a
6  daily basis.

7  Additionally, there are some health issues that are
8  brought out in many of the documents presented before the Court
9  regarding his lack of vision in one eye and how his career with
10 the police department was cut short as a result of,
11 unfortunately, some improperly executed surgery on his eyes.

12 He has done everything possible to demonstrate to this
13 Court that he is capable of living a law-abiding life with his
14 family, and he is benefiting several communities both in the
15 city and outside of the country with his good works, and I just
16 wanted the Court to be aware of that.

17 I believe firmly that he is an excellent candidate for
18 deviation from the sentencing guidelines.  And if the Court
19 could impose a sentence outside those guidelines, I would
20 strongly encourage the Court to do so.  Thank you.

21 THE COURT:  Thank you, Mr. Talero.

22 Mr. Valastro, you have an absolute right to address
23 the Court before I impose sentence.  Is there anything that you
24 wanted me to know.

25 THE DEFENDANT:  I would like --

1  THE COURT: I see that you are taking out a written
2  statement, Mr. Valastro. It's perfectly OK for you to read
3  your statement, but I would just ask, because people tend, when
4  they are nervous in situations like this, to read very quickly,
5  that you read slowly and clearly.

6  THE DEFENDANT: I made notes because I'm very nervous.

7  THE COURT: Take your time.

8  THE DEFENDANT: I like to apologize to the Court, to
9  the prosecutor, to NYPD. And I betrayed them. I respect and
10 love the department.

11 I like to apologize to my family and my friends for
12 dragging them into this. It has been a rough tribulation. And
13 I wish to thank my God that gave me a lot of strength through
14 this stressful moment.

15 I came from Italy to the USA and reached a dream,
16 which was to serve the community. And in my life I always
17 believe in helping people. As a kid I grew up in a poor
18 family and I always believe in helping if they need it, even if
19 I have to take it out of my plate and give it to them. In
20 return I was asking for nothing.

21 I was never a religious person. Every time my wife,
22 she is very religious for many, many years, when she was trying
23 to convert me, I used to laugh in her face and make fun of her.

24 I worked hard. I always was trying to make sure that
25 I didn't hurt anybody's feelings and I did everything

correctly.  I really cannot explain what happened to me and why I made this big error, this big mistake.  I really have no answer.  The only answer that I could be giving myself is that the guy who did this dragged me into his world.

The day that I found myself in the cell when I was arrested, I didn't know what to do.  And that day I remember they took the other two police officers out of the room.  I was left by myself.  I don't know why I got on my knees.  I looked up at the ceiling and I only say, why did you abandon me?  That's it.  The moment I looked down, and I found the scar on my hand which resembled a cross had been there.  And since then I felt that that's what my thought my life was going to be.

I did studies in the seminary.  I'm still enrolled in the master degree for the seminary.  My daily since the day that I was arrested, you can say that I spend my days in the house.  I don't go out.  I feel ashamed.  If I go out, I go to that.  I don't go any other places or to see him.

Most of the time I write.  I'm writing two different books, Christian books.  And I work at a Christian radio station which reaches throughout the world.  I am trying to evangelize people, sending the message through the radio waves and, at the same time, with the sacrifice of my wife.  She works.  I don't do anything since the day of the arrest.

We did take the house that she had in Ecuador, she is from Ecuador, and we create a church in a very poor area.  And

you can say that I lead that church from here.  I have a local partner which I prepare everything for them, from the sermons, to the music, to everything.

And we are not looking for anything from anybody.  We are in a poor area.  And my wife takes a portion of our salary and she send it there to feed those people on Sunday and the kids.  We work with a lot of kids as well.  Because she came, also, from a poor family.

Your Honor, I have no idea what happened to me.  I have no idea.  I've been in this court during my career 347 times testifying as an expert witness, and today I find myself on the other side and it's devastating.  I don't know, but people think that I lost my mind because I turned to God.  If it wasn't for him, I would not be here today.  I apologize to all.

I want to thank you, Mr. Talero, for all his help I've been given.  That's it, your Honor.  Thank you.

THE COURT:  Thank you, Mr. Valastro.

In deciding what sentence to impose, in addition to the sentencing guidelines and the commentaries thereto, I have considered all of the factors set forth in Section 3553(a) of Title 18 of the United States Code, including, as most relevant to this case, the nature and circumstances of the offense and Mr. Valastro's history and characteristics.  I have considered the need for the sentence imposed to reflect the seriousness of

the offense, to promote respect for the law, to provide a just punishment for the offense, to afford adequate deterrence to criminal conduct, and to protect the public from further crimes. I have considered the need to avoid unwarranted sentence disparities among similarly situated defendants.

In addition to those factors, which are most relevant to Mr. Valastro's case, because the government has so moved, I have also considered the factors set forth in Section 5K1.1(a) of the sentencing guidelines; namely, my evaluation of the significance and usefulness of Mr. Valastro's cooperation, taking into account the government's assessment, his truthfulness, completeness, and reliability, and that of his information, the nature and extent of his assistance, any injuries suffered or any risk of danger to Mr. Valastro or his family resulting from his cooperation, and the timeliness of his assistance.

And having considered all of these factors, it is my intention to impose a sentence of time served on each count of conviction to be followed by one year of supervised release on the three counts of conviction, all to run concurrently.

I will not impose a fine as I find that Mr. Valastro is not able to pay a fine, and I will also impose the mandatory special assessment of $300 which shall be due immediately.

I believe that this sentence is sufficient but not greater than necessary to comply with the purposes of

1  sentencing set forth in Section 3553(a)(2) for the following
2  reasons:
3          First of all, I remember very well, since I sentenced
4  Mr. Dean and Mr. Espinal, the contours of this offense.  It was
5  a very brazen conspiracy.  It essentially corrupted the
6  licensing division of the police department and it corrupted it
7  at the very highest levels through Mr. Dean, who I believe was
8  if not the head of that office, the second in command of that
9  office.  And the conspiracy was simply one to obtain monies
10 from individuals who were applying for licenses to be able to
11 own and carry weapons, individuals, many of whom who were fully
12 entitled to receive those licenses and would have received them
13 in the ordinary course.
14         But, as important, they also included individuals who
15 likely would not have been able to obtain licenses to own or
16 carry weapons because of various aspects of their backgrounds.
17 So it was a very serious offense carried out by individuals in
18 whom great trust was provided by The City of New York.
19         Your part in this, Mr. Valastro, was, I think,
20 admittedly less than those of the other individuals with whom
21 you conspired.  However, you are an individual, as Ms. Ravener
22 stated, who should have known better.  Even on the time before
23 you were an adult, at least an adult as we define them here in
24 these United States, when you were 17 and perhaps younger, you
25 were an auxiliary police officer in your native Italy.  It was

clear from early on that you were going to devote your professional life to law enforcement. And it is equally clear that over the course of your career as a law enforcement officer you were, by all accounts, a very good officer who carried out your job at times with valor for which you were recognized.

After your retirement, which perhaps came a little early as a result of the physical difficulties that you faced, you began a business, which by all accounts was a successful business, and you allowed yourself to become involved in this conspiracy.

There is no reason, as far as I can tell, why from one minute to the next you went from being a completely law-abiding individual to one who willingly associated yourself with this criminal conspiracy other than greed and the desire to obtain whatever monies would result from the successful carrying out of the conspiracy.

However, it is equally clear that despite your knowing and willful involvement in the conspiracy, there came a time that you determined that it was the right thing to do not only to accept responsibility for your wrong conduct, but to assist the government in the prosecution of those who, again, from the perspective of at least myself, were more culpable than you who were in more significant roles, at least within the law enforcement scheme, than you.

And I also take into consideration your evident contrition, the way in which you have changed your life since your arrest.  Although I am at heart a cynical person and always look very carefully at dramatic changes in personal behavior after an arrest, my working assumption is that you are being truthful in your assertions that you have committed yourself to a life inspired by your religious beliefs and that of your wife.  I consider that you are being truthful in your assertions that you will continue to follow the course that you have chosen over the last couple of years and continue to support your church in Ecuador that you founded with your wife.  And also because of not only the 5K1.1 factors, but also the fact that I find that you are less culpable than some of your codefendants, and because of the sentences that were imposed on other codefendants who are similarly situated than you, I find that a sentence of time served is adequate and required in this case.

With that, does counsel know of any legal reason, other than what has already been argued, why the sentence should not be imposed as I've indicated?

Ms. Ravener.

MS. RAVENER:  No, your Honor.

THE COURT:  Mr. Talero.

MR. TALERO:  No, your Honor.

THE COURT:  In that event, it is the judgment of this

1    Court that Mr. Valastro be sentenced to time served for each of
2    the three counts on conviction.  That will be followed by one
3    year of supervised release on each count, all to run
4    concurrently.  The standard conditions of supervised release 1
5    through 12 will apply, as well as the following mandatory and
6    special conditions.
7    　　　　　The mandatory conditions are that you not commit
8    another federal, state, or local crime and that you not
9    unlawfully possess a controlled substance and that you refrain
10   from the unlawful use of a controlled substance and submit to a
11   drug test within 15 days and at least two periodic tests
12   thereafter, as determined by probation, to determine whether or
13   not you are using illicit substances, and that you cooperate in
14   the collection of DNA as directed by probation.
15   　　　　　The one special condition is that if you move from the
16   Southern District of New York, it is recommended that you be
17   supervised by the district of residence.
18   　　　　　As I indicated, I will not impose a fine because I
19   find that you are not able to pay a fine.
20   　　　　　Ms. Ravener, is the government seeking forfeiture or
21   is there a preliminary order of forfeiture entered in this
22   case?
23   　　　　　MS. RAVENER:  No, your Honor.  I don't believe it is
24   applicable.
25   　　　　　THE COURT:  Are there any open counts or underlying

1  indictments?

2          MS. RAVENER:  There are, your Honor, and at this time
3  the government moves to dismiss the open counts as to
4  Mr. Valastro.

5          THE COURT:  That application is granted.

6          That constitutes the sentence of the Court.

7          Mr. Valastro, you actually have a right to appeal the
8  sentence.  However, the time period within which you must
9  appeal is rather restricted.

10         Mr. Talero, will you assure me that you will promptly
11 and thoroughly discuss with Mr. Valastro his appellate rights.

12         MR. TALERO:  Yes, your Honor.

13         THE COURT:  Mr. Talero, do you have any other
14 applications?

15         MR. TALERO:  May I just ask my client a question?

16         THE COURT:  Sure.

17         MR. TALERO:  No.  Thank you, your Honor.

18         THE COURT:  Any other applications, Ms. Ravener?

19         MS. RAVENER:  No, your Honor.

20         THE COURT:  Mr. Talero.

21         MR. TALERO:  No, your Honor.

22         THE COURT:  In that event, we are adjourned and,
23 Mr. Valastro, good luck to you, sir.

24         THE DEFENDANT:  Thank you very much.

25         (Adjourned)